IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 1901 GATEWAY HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-2607-BN |
| | § | |
| CENTIMARK CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Defendant CentiMark Corporation ("CentiMark") has filed a Motion to Dismiss for *Forum Non Conveniens*. *See* Dkt. No. 7. Plaintiff 1901 Gateway Holdings, LLC ("Gateway") has filed a response. *See* Dkt. No. 18. CentiMark has filed a reply. *See* Dkt. No. 21.

For the following reasons, the Court denies CentiMark's Motion to Dismiss [Dkt. No. 7].

## Background

This case arises from a dispute over repairs allegedly made to a building located at 1901 Gateway Drive, Irving, Texas 75038 ("the Property"). According to the parties, in January 2012, CentiMark entered into a sales agreement (the "Sales Agreement") with then-owner, KPC Gateway, L.P., ("KPC") for CentiMark to perform roofing work on the Property. *See* Dkt. No. 7 at 1.

Among other things, the Sales Agreement contains (1) venue and choice-of-law provisions stating that Pennsylvania law governs disputes arising out of the

agreement and that jurisdiction and venue for any such dispute vests in the courts of Washington County, Pennsylvania; and (2) a clause providing KPC an exclusive, Non-Prorated Limited Roof Warranty (the "Warranty"). *See id*. at 2.

The Warranty also contains its own venue and choice-of-law provision, which states that "[j]urisdiction and venue of any dispute arising under/or pursuant to the terms of this warranty shall be vested in the courts sitting in Washington County, Pennsylvania." *Id*. at 3. The Warranty further states that it is not assignable but that "[a]pplication may be made by a new building owner for re-issuance of the warranty during the original warranty period," which CentiMark "reserve[s] the right, at its sole discretion, to refuse." *Id*.

A year after CentiMark and KPC entered into the Sales Agreement, KPC sold the Property to Mobile Park Investments ("Mobile Park"). *See id*. In connection with the sale, and on KPC's application, CentiMark approved and re-issued an assignment of the Warranty to Mobile Park. *See id*. According to Gateway, the roof suffered minor leaks during Mobile Park's ownership, which CentiMark repaired and represented to Mobile Park were fully corrected. *See* Dkt. No. 11 at 2.

In 2020, Mobile Park purportedly initiated efforts to sell the Property. *See id*. During a related inspection of the Property, Mobile Park allegedly discovered "significant problems with the roof, including leaks and moisture between the roof membrane and decking." *Id*. Mobile Park requested that CentiMark repair the roof, but CentiMark declined and continues to decline to perform further work on the roof. *See id*.

Mobile Park sold the Property to Gateway in Fall of 2020, assigning Gateway any and all of its claims against CentiMark relating to roof repair as part of the transaction. *See id*. at 3. Unlike the KPC sale, neither Mobile Park nor Gateway sought to obtain an assignment of the Warranty to Gateway, and CentiMark did not approve one. *See* Dkt. No. 7 at 3. CentiMark alleges that, after the sale, Gateway made demands under the Warranty for CentiMark to repair the roof, which CentiMark refused to perform because Gateway did not hold the Warranty. *See id*. at 4.

In December 2020, Gateway filed a Petition for Pre-Suit Deposition in the 101st District Court in Dallas County, Texas. *See* Dkt. No. 7-5, Ex. E. CentiMark objected to pre-suit discovery on the basis of the forum selection clauses in the Sales Agreement and Warranty and filed a declaratory judgment action in the United States District Court for the Western District of Pennsylvania in April 2021. *See* Dkt. No. 7 at 4-5. Gateway filed a Federal Rule of Civil Procedure 12(b)(2) Motion to Dismiss, which the Court granted on September 17, 2021. *See id*. at 5.

On September 20, 2021, Gateway filed this action in the 191st Judicial District of Dallas County, Texas, bringing claims for Negligence, Negligent Misrepresentation, and Breach of Contract. *See id*. at 6; Dkt. No. 11 at 3-4. CentiMark timely removed this action to federal district court on the basis of complete diversity of the parties, *see* Dkt. No. 6, and subsequently filed this Motion to Dismiss for *Forum Non Conveniens*, *see* Dkt. No. 7.

**Legal Standard**

In a diversity action, a district court may employ the doctrine of *forum non conveniens* to "decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so that the case can be adjudicated in another forum." *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020). Traditionally, *forum non conveniens* provides courts with criteria to select the appropriate forum when two or more forums are available in which the defendant is amenable to process. *See McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001). *Forum non conveniens* is also "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013).

Ordinarily, courts determine the efficacy of a *forum non conveniens* motion to dismiss by considering the same private- and public-interest factors considered in a 28 U.S.C. § 1404(a) transfer analysis. *See id.* at 60-61; *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 & n.6 (5th Cir. 2016). This analysis requires courts to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote the 'interest of justice.'" *Atl. Marine, 571 U.S.* at 62-63. Typically, courts give deference to the plaintiff's choice of forum and charge the moving party with the burden to demonstrate that the transferee venue is more convenient. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

But "[t]he existence of a mandatory, enforceable [forum-selection clause] dramatically alters this analysis." *Weber*, 811 F.3d at 767. "First, the plaintiff's choice

4

of forum 'merits no weight,'" and the burden shifts to the plaintiff to show "that ... [*forum non conveniens*] dismissal is unwarranted." *Id.* (quoting *Atl. Marine*, 571 U.S. at 63). Second, the Court should disregard "arguments about the parties' private interest," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64.

And so the Court's analysis is limited to consideration of the following public-interest factors: (1) the "administrative difficulties flowing from court congestion;" (2) "the local interest in having localized controversies decided at home;" (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;" (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Weber*, 811 F.3d at 776. "The factors 'will rarely defeat a transfer motion,' so 'the practical result is that [forum-selection clauses] should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

## Analysis

CentiMark seeks dismissal on the basis that the forum selection clauses ("FSC") in the Sales Agreement and Warranty govern this dispute, and thus this case must be dismissed for *forum non conveniens* and refiled, if at all, in state court in Washington County, Pennsylvania. In response, Gateway argues that dismissal is not mandated because (1) the FSCs are permissive, not mandatory; (2) Gateway's claims do not arise under the FSCs; and (3) Gateway is not a party to either the Sales

5

Agreement or the Warranty and is thus not subject to the FSCs.

### I.  Choice of Law Analysis

As a threshold matter, the Court must establish what law should be applied. The United States Court of Appeals for the Fifth Circuit has clarified that federal law governs the enforceability of a FSC, but state law governs its interpretation. *See Weber*, 811 F.3d at 771. As this matter is being heard by a federal court sitting in diversity, the Court applies the forum state's – here, Texas's – choice-of-law rules to determine which state's substantive law will apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Texas choice-of-law rules direct courts to conduct different analyses depending on whether there is an effective choice of law by the parties. Where a valid and enforceable choice of law provision governs the dispute, the Court will apply the law selected by the parties, unless the issue in dispute could not have been resolved by an explicit provision in the agreement and either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice or (b) application of the chosen state's law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Restatement (Second) of Conflict of Laws § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. *See* Restatement (Second) of Conflict of Laws § 187 (1971).

In the absence of an effective choice of law by the parties, the Court must

determine and apply the law of the state that has the most significant relationship to the parties and the dispute. *See* Restatement (Second) of Conflict of Laws § 188 (1971).

Here, it is not immediately apparent what body of law should govern this dispute under Texas choice-of-law rules. Both the Sales Agreement and the Warranty FSCs contain a choice-of-law clause that could dictate Pennsylvania law should be applied to interpret the scope and applicability of the FSCs. But the interpretation of the FSCs could determine that the choice-of-law provision does not govern this dispute. It is undisputed that Gateway never negotiated or signed either agreement. In fact, one of Gateway's primary contentions in this case is that, because it is not a party to those contracts, it is not bound by their provisions.

While the Fifth Circuit generally applies foreign law to determine the meaning of a FSC, "this premise can only apply when the contract contains a valid and explicit choice of law provision selecting the law of a foreign forum." *Weber*, 811 F.3d at 770-71. And, as discussed, it is unclear whether or not a valid choice-of-law provision governs here.

Nor is the issue of whether the parties' choice of law provision governs ultimately inconsequential, as it sometimes is in cases where the state whose law the parties contractually selected also has the most significant relationship to the dispute. *See, e.g.*, *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-cv-2177-L, 2017 WL 106835, at *4 (N.D. Tex. Jan. 11, 2017), *aff'd*, 2017 WL 3209399 (N.D. Tex. June 19, 2017) (applying California law without explicitly finding that the contract's choice of

law clause governed because California also plainly had the strongest relationship to the parties and the transaction). In this case, Texas is the center of the parties' relationship. Gateway is a Texas citizen, and CentiMark operates work crews out of multiple locations in Texas; the Property at issue is located in Texas; the Sales Agreement and Warranty executed to govern work on the Property were negotiated in Texas and performed by Texas residents in Texas; and all of the acts and omissions constituting CentiMark's alleged torts and breach of contract occurred in Texas. *See* Restatement (Second) of Conflict of Laws §§ 145, 188 (1971). Conversely, other than the FSCs in the Sales Agreement and Warranty and the fact that CentiMark maintains its principal place of business in Washington County, Pennsylvania, there appears to be no connection to any state other than Texas.

Texas thus has the most significant relationship to the occurrence and the parties to this matter, and, under the analysis applied in cases in which there is not a valid and applicable FSC, Texas choice-of-law rules dictate that Texas substantive law should be applied here. *See id.*

Nevertheless, and without explicitly arguing choice of law, Gateway states multiple times that Pennsylvania substantive law governs interpretative analysis of the FSCs. *See* Dkt. No. 18 at 6, 8-9. And the Fifth Circuit has held that "[c]ourts may be justified in pretermitting [the choice-of-law] analysis when[, as here,] neither party contends that any distinctive feature of the relevant substantive law decides the dispute." *Weber*, 811 F.3d at 771.

Because the parties agree that Pennsylvania substantive law should govern,

the Court applies it to analyze whether the FSCs are mandatory and, if so, whether Gateway's claims fall within their scope.

## II.      Validity and Enforceability of the FSC

The analysis begins with consideration of whether a FSC is mandatory or permissive, because only "[o]nly mandatory clauses justify ... dismissal." *Weber*, 811 F.3d at 768; *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n.7 (3d Cir. 1973) (distinguishing between forum-selection clauses that mandate "exclusive jurisdiction" and those that "merely consent" to jurisdiction). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract." *Agri-Marketing, Inc. v. ProTerra Sols., LLC*, No. 5:17-cv-00627, 2018 WL 1444167, at *3 (E.D. Pa. Mar. 22, 2018) (citing *Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014)).

There is little agreement among federal courts as to what constitutes a mandatory forum selection clause, but Pennsylvania courts have consistently held that "clauses that merely empower a court to hear litigation and in effect waive any objection to personal jurisdiction in that court [] are 'permissive,'" whereas "when a forum selection clause contains exclusive or obligatory language, it is considered mandatory." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. CV 21-4664, 2021 WL 5987318, at *4 (E.D. Pa. Dec. 17, 2021) (quoting *Samuel T. Freeman & Co. v. Hiam*, No. CIV.A. 12-1387, 2012 WL 2120474, at *8 (E.D. Pa. June 11, 2012)).

The Sales Agreement choice-of-law and forum selection provision states:

> Any disputes or actions relating to or arising out of the Work to be
> performed pursuant to this Sales Agreement shall be exclusively
> governed by the laws of the Commonwealth of Pennsylvania.
> Jurisdiction and venue of any action or proceeding arising out of or
> relating to the Sales Agreement shall be vested in the state or federal
> courts in Washington County, Pennsylvania. Purchaser irrevocably
> waives any objections it now has or may hereafter have to the
> convenience or propriety of this venue.

Dkt. No. 7, Ex. A.

> The Warranty choice-of-law and forum selection provision states:

> This Warranty is issued at the Corporate offices of CentiMark
> Corporation in Canonsburg, Pennsylvania, and accordingly is governed
> by Pennsylvania law. Jurisdiction and venue of any dispute arising
> under/or pursuant to the terms of this Warranty shall be vested in the
> courts sitting in Washington County, Pennsylvania.

Dkt. No. 7, Ex. B. CentiMark argues that the provision in both clauses stating that

"[j]urisdiction and venue … shall be vested in the … courts in Washington County,

Pennsylvania" restricts venue to Pennsylvania and renders both FSCs mandatory.

*See* Dkt. 21 at 4. The Court disagrees.

CentiMark relies on the presence of "shall" in both clauses, contending that

"shall" is mandatory language and that its use in a clause specifying jurisdiction

and/or venue necessarily forecloses all other possibilities. *See id.*

While it is true that Pennsylvania courts regard "shall" as an indication of

mandatory intent, *see Frazetta v. Underwood Books*, No. 3:CV-08-0516, 2009 WL

959485, at *4 (M.D. Pa. Apr. 6, 2009) (noting that "it is generally recognized that the

word 'shall' is to be interpreted as mandatory"), the words preceding and following it

are of equal importance in determining the clause's meaning, *see Maguire Insurance*

*Agency, Inc. v. Amynta Agency, Inc.*, No. 5:21-CV-4664, 2021 WL 5987318, at *3 (E.D.

10

Pa. Dec. 17, 2021) ("Where a forum-selection clause involves the consent to jurisdiction in a named forum but provides no language indicating that jurisdiction is exclusive, the forum-selection clause is merely permissive.").

Here, both clauses direct that jurisdiction and venue "shall be vested in" the courts of Washington County, Pennsylvania. Dkt. No. 7, Ex. A, B. "Vested," used here as a transitive verb, means to be granted or endowed with a particular authority that is "[f]ixed; accrued; settled; absolute." MERRIAM-WEBSTER DICTIONARY; BLACK'S LAW DICTIONARY (11th ed. 2019). But the word does not alone denote exclusivity. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (identifying contexts where authority is "vested exclusively" or "vested in a single person"); *see also, e.g.*, *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 834 (W.D. Pa. 2006) ("[A] clear and unequivocal clause that vests exclusive jurisdiction in a particular forum will be recognized as a 'forum selection clause' and enforced as a substantive provision of the parties' agreement.").

The clauses mandate that the courts of Washington County, Pennsylvania shall have jurisdiction over, and are a proper venue for, any dispute arising from the Sales Agreement and Warranty. This sentence, in effect, prevents the parties from challenging a lawsuit brought in Washington County, Pennsylvania on the basis of jurisdiction or venue.

But there is no exclusionary or obligatory language precluding or negating jurisdiction or proper venue in another forum. *See Sept. Props. LLC v. Millionaire Gallery, Inc.*, No. 18-988, 2018 WL 4466066, at *5 (E.D. Pa. Sept. 18, 2018) ("A general

maxim in interpreting forum-selection clauses is that an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion."); *cf. Wolfe v. TBG Ltd.*, No. CIV.A. 13-3315, 2014 WL 325637, at *2 (E.D. Pa. Jan. 28, 2014) ("The Plan and the rights of each person hereunder will be governed by the laws of [] England and subject to the *sole* jurisdiction of the English Courts."); *Petrik v. Corr. Eyecare Network, Inc.*, No. 4:12-CV-2252, 2013 WL 12203007, at *6 (M.D. Pa. Aug. 22, 2013) ("The parties consent to the jurisdiction of the Courts of the State of New York and as the *exclusive* courts of jurisdiction with respect to the interpretation or enforcement of the provisions of this agreement."); *Com. Com. Leasing, LLC v. Jay's Fabric Ctr.*, No. CIV.A.04-4480, 2004 WL 2457737, at *1 (E.D. Pa. Nov. 2, 2004) ("[A]ll legal actions relating to this Lease shall be venued *exclusively* in a state or federal court located within [the State in which the assignee's principal offices are located].") (emphasis added).

Nor is the clause phrased such that the only reasonable interpretation is that venue is limited to a specific jurisdiction. *See, e.g.*, *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85-86 (3d Cir. 2006) ("This Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania."); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298-300 (3d Cir. 2001) ("No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern

12

District of New York"); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (enforcing as exclusive a forum selection clause in a real estate contract requiring that "any litigation upon any of [the agreement's] terms ... shall be maintained" in a state or federal court in Miami).

In the case of the Sales Agreement FSC, reading the jurisdiction and venue sentence in the context of the choice-of-law and forum selection clause gives further support to the conclusion that the parties did not intend to limit jurisdiction and venue to only Pennsylvania.

The choice-of-law clause, which directly precedes the forum selection clause, provides that "[a]ny disputes or actions relating to or arising out of the Work to be performed pursuant to this Sales Agreement shall be exclusively governed by the laws of the Commonwealth of Pennsylvania. Dkt. No. 7, Ex. A. The use of both the compulsory "shall" and the limiting "exclusively" make the choice-of-law clause's intent clear: the parties agree that Pennsylvania law, and only Pennsylvania law, governs disputes arising from the Sales Agreement.

But that limiting language is absent from the forum selection clause, which similarly covers any action or proceeding arising out of or relating to the Sales Agreement but drops the exclusivity term as to jurisdiction and venue.

As the United District Court of the Southern District of Georgia noted when it considered an identical forum selection clause litigated by CentiMark: "[W]hen comparing the forum selection clause with the choice of law provision contained in the immediate prior sentence (employing 'exclusively' language), it is clear that the

13

parties knew how to draft a mandatory clause. They simply chose not to do so in drafting this forum selection clause." *Savannah Invs. v. Centimark Corp.*, No. 405CV038, 2005 WL 8156254, at *3 (S.D. Ga. Aug. 1, 2005).

The Warranty FSC lacks any exclusivity language at all, but the same reasoning holds. The exclusivity language in the Sales Agreement choice-of-law provision evidences that CentiMark knew how to draft a mandatory clause and did so other contexts. And the omission of exclusive language from the Warranty FSC indicates that it is permissive, not mandatory.

### III.   Dismissal Under Traditional *Forum Non Conveniens*

Because both FSCs are permissive and thus do not apply to compel dismissal, the question remains whether dismissal is nonetheless appropriate to "best serve the convenience of the parties and the interests of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). To answer that question, the Court applies the traditional *forum non conveniens* analysis to "determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016).

A defendant invoking the doctrine of *forum non conveniens* shoulders a "heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Unless the balance of private- and public-interest factors "strongly favors the defendant[], the plaintiff's choice of forum should

14

not be overturned." *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986).

    A. <u>Availability and Adequacy of Alterative Forum</u>

    "An alternative forum is available when the entire case and all parties can come within the jurisdiction of that forum." *City of New Orleans Employees' Ret. Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 296 (5th Cir. 2013) (quoting *Saqui v. Pride Cent. Am. LLC*, 595 F.3d 206, 211 (5th Cir. 2010)). This requirement is satisfied where a defendant submits to, or is amenable to process in, another jurisdiction. *Id.*; *City of New Orleans Employees' Ret. Sys.*, 508 F. App'x 293 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22). Here, CentiMark asserts in its motion to dismiss that the "the parties … agreed to venue (and jurisdiction) of courts physically located in Washington County[, Pennsylvania]," indicating submission and amenability to suit in that forum. Dkt. No. 7 at 15. Furthermore, CentiMark's unchallenged position that it maintains its "principal office in Washington County, Pennsylvania" supports the conclusion that it has submitted to state court jurisdiction there. Dkt. No. 1 at 2. While Gateway objects to CentiMark's attempt "to force Gateway to sue in Pennsylvania state court, a locale with which it has no jurisdictional contacts and no connection to this dispute," it does not provide any reason why this action could not be brought in Washington County, Pennsylvania or why CentiMark could not be served with process in that forum. Dkt. No. 18 at 1. The Court thus finds the availability requirement to be satisfied.

    An alternative state forum is adequate "when the parties will not be deprived

of all remedies or treated unfairly." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987). Neither party addresses the adequacy of Pennsylvania state court as an alternative forum, but "a party moving to dismiss for *forum non conveniens* 'may rely on a presumption that the [alternative] forum is adequate.'" *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 781 (S.D. Tex. 2014) (quoting *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245, 249 (5th Cir. 2014)). Although Gateway asserts its claims of negligence, negligent misrepresentation, and breach of contract under Texas law, Pennsylvania courts routinely consider these types of common law claims. *See, e.g.*, *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 631-32 (Pa. Super. Ct. 2009) (discussing negligence claim); *GoInternet.net Inc. v. SBC Commc'ns Inc.*, 64 Pa. D. & C.4th 353, 367 (Com. Pl. 2003) (discussing claim of negligent misrepresentation under Texas and Pennsylvania law); *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. Ct. 2020) (discussing claim for breach of contract); *see also Atlantic Marine*, 571 U.S. at 584 ("[J]udges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a [] judge sitting in [another state]."). And Gateway makes no argument that Pennsylvania state court is inadequate, that it will lack a remedy there, or be subject to unfair treatment. Accordingly, the Court finds that Pennsylvania state court is an adequate alternative forum.

    B. <u>Private and Public Interest Factors</u>

    If an adequate and available alternative forum exists, the court considers

16

private and public interest factors. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Turan v. Universal Plan Investments, Ltd.*, 248 F.3d 1139, 1144 (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1153–54 (5th Cir. 1987). The doctrine also addresses whether the actions brought are vexatious or oppressive, or whether the interests of justice require that the trial be had in a more appropriate forum. *In re Air Crash*, 821 F.2d at 1158.

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999); *In re Air Crash*, 821 F.2d at 1162–63. When considering the public interest factors, the key question a court must answer is "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Seguros Comercial Americas S.A. De C.V. v. Am. President Lines, Ltd.*, 933 F.Supp. 1301, 1313 (S.D. Tex. 1996).

The parties do not address the private and public factors in their briefs, which only discuss the validity and enforceability of the forum selection clauses. But in the absence of a mandatory FSC, the burden is on the moving party, here CentiMark, to demonstrate that an alternative venue is more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Having declined to address any of the factors that would allow the Court to properly weigh the balance of interests, CentiMark has failed to carry its burden showing why dismissal is appropriate under the doctrine of *forum non conveniens*. Further, given that the alleged conduct at issue occurred in Texas, in relation to property sitting in Texas, involving parties subject to personal jurisdiction in Texas, the Court does not independently find that Texas federal court is an inappropriate forum for this suit. Accordingly, and in keeping with the deference typically given to plaintiff's choice of forum, the Court declines CentiMark's invitation to dismiss this action.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Defendant CentiMark's Motion to Dismiss for *Forum Non Conveniens* [Dkt. No. 7].

SO ORDERED.

DATED: August 29, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

18