IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 1901 GATEWAY HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-2607-BN |
| | § | |
| CENTIMARK CORPORATION | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant CentiMark Corporation has filed a motion to dismiss, which was converted to a motion for summary judgment. *See* Dkt. Nos. 36 & 42.

Plaintiff 1901 Gateway Holdings LLC ("Gateway") responded, and CentiMark filed a reply. *See* Dkt. Nos. 45 & 47. Gateway filed an objection to CentiMark's reply. *See* Dkt. No. 48.

For the reasons and to the extent explained below, the Court denies CentiMark's motion for summary judgment.

### **Background**

Plaintiff 1901 Gateway Holdings, LLC's claim against CentiMark is based on CentiMark's alleged warranty coverage of property that is now owned by Gateway.

CentiMark installed a roof system on the property at 1901 Gateway Drive, Irving, Texas, 75038 and provided a warranty on the roof to the building owner. *See* Dkt. No. 11 at 2. The warranty agreement stated "this warranty is not assignable by

operation of law or otherwise. Application may be made by a new building owner for re-issuance of the warranty." *See* Dkt. No. 36 at 2.

The 1901 Gateway property was sold to Mobile Park, and the warranty was validly assigned to Mobile Park with CentiMark's consent. *See id.* When Mobile Park sold the property to Gateway, it assigned the roof warranty and claims to Gateway without obtaining CentiMark's consent. *See id.*

Gateway alleges that, during Mobile Park's ownership of the property, the roof began leaking and CentiMark did not properly repair the roof before refusing further repairs. *See* Dkt. No. 11 at 2. And, so, Gateway alleges, Mobile Park has valid claims against CentiMark – claims which Gateway now seeks to assert. *See id.* at 2-3.

Gateway originally filed in state court against CentiMark, and CentiMark timely removed the case to this Court on the basis of diversity jurisdiction. *See* Dkt. No. 6 at 2. In Gateway's amended complaint, it brings claims for negligence, negligent misrepresentation, and breach of contract. *See* Dkt. No. 11 at 3-4. CentiMark filed an answer to the amended complaint. *See* Dkt. No. 14.

Invoking Federal Rule of Civil Procedure 12(b)(1), CentiMark filed a motion to dismiss, arguing that, because the warranty was improperly assigned, Gateway did not have warranty coverage from CentiMark and so did not have standing to bring Gateway's current claim against CentiMark. *See* Dkt. No. 36. The Court converted the motion to dismiss to a motion for summary judgment with the consent of the parties because the motion relied on exhibits outside of the pleadings. *See* Dkt. No. 42.

Gateway filed a response, *see* Dkt. No. 45, and CentiMark filed a reply, *see* Dkt. No. 47. And Gateway filed an objection to CentiMark's reply, asserting that CentiMark raised new arguments in its reply that should be stricken from the summary judgment record. *See* Dkt. No. 48.

**Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to

properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.    <u>Assignment of Causes of Action</u>

The central issue on CentiMark's motion is whether Mobile Park's assignment of the "roof warranty and claims" is barred by the anti-assignment language in the warranty.

The warranty states in relevant part that

[t]his warranty is not assignable by operation of law or otherwise. Application may be made by a new building owner for reissuance of the warranty during the original warranty period. Certain procedures including, but not limited to, an inspection of the Roofing System by a CentiMark representative and fees will apply to any re-Issuance. CentiMark reserves the right, at its sole discretion, to refuse to reissue this warranty.

Dkt. No. 36 at 4.

The sales agreement also states that

[t]he only warranty to be provided by CentiMark ... will be the CentiMark Corporation Non-Prorated Limited Warranty..., which terms and conditions shall govern all warranty matters ... [t]o be valid, any changes to the Warranty must be specifically approved in writing by a Corporate Officer of CentiMark Corporation.

*Id.*

In its sale of the property to Gateway, Mobile Park executed an "Assignment of Roof Warranty and Claims," assigning

any and all warranties, services, rights to proceeds and sums of money due or owing to Mobile Park, and all claims, demands, and causes of action, without limitation, that Mobile Park has or may have against Centimark Corporation, a Pennsylvania corporation "Centimark"), arising out of or relating to that certain Non-Prorated Limited Roof Warranty – Thermoplastic Roof Systems issued by Centimark and transferred by Centimark to Mobile Park in conjunction with Centimark's installation of a roof on the commercial building located at 1901 Gateway Drive in Irving, Texas on or about May 2012 (the "Roof Warranty").

Mobile Park hereby irrevocably appoints Gateway as its true and lawful attorney or attorneys, with full power of substitution and revocation, for Mobile

Park and in its name, or otherwise, but for its or their sole use and benefit, to ask, demand, sue for, collect, receive, compound, and give acquittances for all claim or claims, in whole or part, arising under the Roof Warranty. Mobile Park agrees to cooperate with Gateway in the prosecution of any claims under the Roof Warranty, obtaining any necessary consent to the assignment of the Roof Warranty from Centimark, and in the event Mobile Park receives any proceeds or payments under the Roof Warranty, Mobile Park agrees to immediately forward same to Gateway.

Dkt. No. 46 at. App. 5.

Mobile Park's assignment of the warranty to Gateway violates the anti-assignment clause in the warranty. "When deciding what rights, if any, have been assigned, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless. In construing a written contract, the primary concern of the court is to ascertain and give effect to the parties' intentions as expressed in the instrument.'" *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-cv-2682-BH, 2022 WL 209276, at *6 (N.D. Tex. Jan. 24, 2022) (cleaned up).

And Mobile Park intended to assign both the warranty and causes of action. The assignment is titled "Assignment of Roof Warranty and Claims" and assigns to Gateway "all warranties, services, rights to proceeds, and sums of money due or owing to Mobile Park, and all claims, demands, and causes of action, without limitation, that Mobile Park has or may have against Centimark Corporation." Dkt. No. 46 at App. 5. Mobile Park also intended to "[obtain] any necessary consent to the assignment of the Roof Warranty from Centimark," which did not occur. *Id.*

But, even though the assignment of the warranty conflicts with the anti-assignment clause, Gateway contends that Mobile Park could still assign its causes

of action based on the principle in Texas law that a party can assign a cause of action even if the contract on which it is based is unassignable.

Gateway cites several cases recognizing a distinction between assigning a contract and causes of action stemming from the contract. Texas courts have consistently found that "causes of action are freely assignable," with some exceptions not applicable to this case. *City of Brownsville ex rel. Pub. Utilities Bd. v. AEP Texas Cent. Co.*, 348 S.W.3d 348, 358 (Tex. App. – Dallas 2011, no pet.).

For example, a Texas Court of Appeals held that a clause making a lease unassignable did not prevent the party from assigning a breach of contract claim arising from breach of the lease because "Texas law recognizes a distinction between a contracting party's ability to assign rights under a contract containing an anti-assignment provision, and that same party's ability to assign a cause of action arising from breach of that contract." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex. App. – El Paso 2010, pet. denied).

And a Texas Court of Appeals has held that the "plain wording" of an agreement that prevented the party from "assign[ing], transfer[ring], convey[ing], sub-let[ting] or otherwise dispos[ing] of this contract … or any right, title, or interest in, to or under the same" did not prohibit the party from assigning a breach of contract action. *City of San Antonio v. Valemas, Inc.*, No. 04-11-00768-CV, 2012 WL 2126932, at *8 (Tex. App. – San Antonio June 13, 2012, no pet.); *see also City of Brownsville*, 348 S.W.3d at 358 (finding assignment clause that stated "the rights and duties under the agreement were not assignable without written consent of the other party" did

"not indicate an intent to limit the parties' ability to assign causes of action arising from the alleged breach of the purchase and sale agreement").

And, when there was uncertainty regarding whether the contract underlying the breach of contract claim was validly assigned, a Texas Court of Appeals held that the assignment of the contract did not affect the court's finding that the party retained a common-law right to assign a cause of action. *See Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 156 n.3 (Tex. App. – Austin 2017, pet. denied).

CentiMark contends that the warranty agreement prevents both assignment of the warranty and assignment of causes of action stemming from the warranty. CentiMark maintains a distinction between assigning the warranty and causes of action from the warranty is meaningless because any cause of action must accrue from a legal right, which Gateway does not have. *See* Dkt. No. 47 at 1.

CentiMark cites multiple cases holding that "only the person whose primary legal right has been breached may seek redress from an injury" and that, "[i]n contract actions, privity of contract is an essential element of recovery." *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738 (Tex. App. – Dallas 1990, writ granted (Nov. 14, 1990), writ denied (Jan. 16, 1991), writ withdrawn (Jan. 16, 1991)).

And CentiMark emphasizes that "[n]on-assignment clauses have been consistently enforced by Texas courts." *Texas Farmers Ins. Co. v. Gerdes By &*

*Through Griffin Chiropractic Clinic*, 880 S.W.2d 215, 218 (Tex. App. – Fort Worth 1994, writ denied).

For example, a non-assignment clause stating that "[y]our rights and duties under this policy may not be assigned without our written consent" barred any assignment of rights and prevented the plaintiff from asserting a breach of contract claim. *Id.* at 218-219. As the Fifth Circuit explained regarding the assignment of an insurance policy, an "attempt to differentiate 'rights and duties' from 'claims and causes of actions'" is "'specious,'" particularly when plaintiffs "are attempting to obtain coverage" under a policy or when the state court petition indicates the plaintiffs are pursuing their own individual claims under a policy. *LNY 5003, L.L.C. v. Zurich Am. Ins. Co.*, No. 22-20573, 2023 WL 6621677, at *4-*5 (5th Cir. Oct. 11, 2023). And a Texas Court of Appeals held that a provision assigning "all rights 'in, and growing in any manner out of' [a] construction contract" included the breach of contract claim from the construction contract, as the claim arose out of the contract. *Harlandale Indep. Sch. Dist. v. C2M Const., Inc.*, No. 04-07-00304-CV, 2007 WL 2253510, at *3 (Tex. App. – San Antonio Aug. 8, 2007, no pet.).

And, so, CentiMark argues that, because the breach of contract claim arises out of the warranty, the anti-assignment clause prevents Gateway from having standing to assert a breach of contract claim.

To interpret anti-assignment clauses, courts look to the parties' intent. *See Pagosa*, 323 S.W.3d at 212. And, to determine the parties' intention in warranties,

courts apply contract law. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008).

> Contractual terms receive their ordinary and plain meaning unless the contract indicates the parties intended to give the terms a technical meaning. Where a contract is written so that it can be given "a definite or certain legal meaning," it is not ambiguous. However, where a contract is subject to two or more reasonable interpretations, it is ambiguous and extrinsic evidence may be considered.

*Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) (cleaned up).

The Court concludes that the plain wording of the warranty indicates an intent to prohibit only the assignment of the warranty, not causes of action arising from the warranty. *See City of San Antonio*, 2012 WL 2126932, at *9 (a clause prohibiting assignment of the contract "merely preclude[s] the assignment of rights and duties under the contract.… A breach of contract claim is not a right or interest identified in the contract."); *cf. Certain Underwriters at Lloyd's v. PV Hous. Grp. LP*, No. CIV-H-10-3024, 2012 WL 10688348, at *7 (S.D. Tex. Jan. 9, 2012) (holding that, where, "[o]n its face, the provision states that the Certificate (the Policy) cannot be assigned in whole or in part without the written consent of the Plaintiff, this language contemplates that neither the Policy in its entirety (whole assignment) or any right or duty which stems from the Policy (partial assignment) may be assigned without the consent of [Plaintiff] and that, since a claim for post-loss proceeds is a right that accrues from the Policy, such a right cannot be assigned without the Plaintiff's consent.").

In this case, the warranty does not contain additional language found in some of the cases that CentiMark cites, such as the prohibition of the assignment of "rights and duties" or "interests" stemming from the warranty. *See, e.g.*, *Texas Farmers Ins. Co.*, 880 S.W.2d at 218.

Without more, the Court cannot conclude that the warranty agreement was intended to prevent Mobile Park from asserting its common law right to assign causes of action from the agreement.

Considerations of other factors support this conclusion.

For example, CentiMark contends that, by allowing the assignment of the breach of contract claim, the Court renders the anti-assignment clause meaningless. But that is not so. Gateway was not validly assigned the warranty – and, so, it cannot assert its own claims under the warranty, and CentiMark does not have additional obligations under the warranty. Asserting claims based on past conduct is different than having current coverage under the warranty.

Courts have also balked at plaintiffs' attempt to bring claims when they are trying to assert coverage under an insurance policy with an anti-assignment clause, particularly when the plaintiff's complaint indicates an attempt to assert its own claims. *See LNY 5003*, 2023 WL 6621677, at *5 ("[P]laintiffs here are attempting to obtain coverage under the Policy. They may not 'circumvent the non-assignment clause' by arguing that its prohibition on the assignment of 'rights and duties' does not preclude an assignment of 'claims or cause of action.' This is especially true when their own state court petition makes clear that [plaintiff] is pursuing its own claims

as if it were itself insured under the Policy."). But Gateway never attempts to assert its own claims under the warranty – which would necessarily entail relying on the assignment of the warranty. In the breach of contract cause of action, Gateway explains:

> In the alternative, Mobile Park and CentiMark are parties to a valid and binding contract for good and valuable consideration for the repair of the roof. Mobile Park fully performed under the contract and CentiMark f[a]iled to perform by, among other items, failing to properly repair the roof. Gateway, as Mobile Park's assignee of those claims, hereby brings those claims on Mobile Park's behalf.

Dkt. No. 11 at 4. And, in the negligence and negligent misrepresentation causes of action, Gateway states that "Gateway, through Mobile Park, has suffered damages arising from CentiMark's" conduct. *Id.* at 3. Gateway's complaint asserts causes of action on behalf of Mobile Park, not its own claims.

These additional considerations support concluding the warranty did not prevent the assignment of causes of action.

Because the cause of action was validly assigned, Gateway and CentiMark are in privity for purposes of this suit.

Texas courts recognize privity of contract as required for standing when "the plaintiff proves the defendant was a party to an enforceable contract with … a third party who assigned its cause of action to the plaintiff." *Pagosa*, 323 S.W.3d at 210. And "[i]t is well settled that when a claim is assigned, the assignee 'steps into the shoes of the [assignor] and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims.' As a result, an assignee may assert those rights that the assignor could assert, including bringing

suit. Accordingly, an assignee of a claim has standing to assert the injury suffered by the assigno*r." Douglas-Peters v. Cho, Choe & Holen, P.C.*, No. 05-15-01538-CV, 2017 WL 836848, at *7 (Tex. App. – Dallas Mar. 3, 2017, no pet.) (citations omitted).

By assignment of Mobile Park's claims, Gateway has standing in this suit.

## II. Applicability of the UCC

Gateway argues that, if the Court does not find the transfer of claims distinct from the warranty assignment, Section 2.210(b) of the Texas Business and Commerce Code bars the anti-assignment provision in the warranty. *See* Dkt. No. 45 at 6; *see generally Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 881 (Tex. App. – Eastland 2003, no pet.) ("Section 2.210(b) is in Chapter 2 of the UCC. Chapter 2 applies to transactions involving the sale of goods.").

CentiMark responds that the UCC is inapplicable because there is no contractual privity between CentiMark and Gateway. *See* Dkt. No. 47 at 5.

The Texas Business & Commerce Code states:

(b) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance. A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation can be assigned despite agreement otherwise.

TEX. BUS. & COM. CODE § 2.210.

This provision applies only to the sales of goods, not other contracts. *See Chul Ju Choi v. Century Sur. Co.*, No. CIV. A. H-10-528, 2010 WL 3825405, at *4 (S.D. Tex. Sept. 27, 2010).

Court decisions suggest that, for sales of goods, there is a right to assign damages for breaches of the contract that invalidates an anti-assignment agreement.

A Texas Court of Appeals entertained the argument that Section 2.210(b) would "render an anti-assignment clause ineffective" but ultimately found the underlying contract was primarily for services, not goods, and so the section did not apply. *See Texas Dev. Co.*, 119 S.W.3d at 882.

And a judge on this Court recognized an absolute right to assign claims under the UCC, explaining that, "[t]o the extent that [defendant] relies on the absolute right under § 2.210(b) to assign damages for breach of contract, [defendant] does not assert a breach of contract claim against [plaintiff], and this absolute right does not apply." *Mary Kay, Inc. v. Dunlap*, No. 3:12-cv-29-D, 2012 WL 2358082, at *9 n.11 (N.D. Tex. June 21, 2012); *see also PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("the UCC expressly provides that warranty claims are assignable").

The Court finds these cases indicate there is an absolute right to assert a breach of contract claim, assigning damages, for contracts where the UCC applies.

As to whether the UCC applies to this contract, Gateway argues that the underlying contract between CentiMark and Mobile Park is primarily for goods, not for services, and so the UCC applies. *See* Dkt. No. 45 at 7. Gateway contends that CentiMark "sold a thermoplastic polyolefin (TPO) roofing system and installation of that 'good.'" Dkt. No. 45 at 7; Dkt. No. 46 at App. 53. CentiMark provided and installed insulation on the roof, "recovering" the original roof. Dkt. No. 46 at App. 53.

CentiMark's warranty is a "single-source warranty" that covers "both workmanship and materials." Dkt. No. 46 at App. 48, App. 57. CentiMark's warranty provided that "CentiMark will repair any leaks resulting from the defects in the maintenance or workmanship in the roof services (services) performed by CentiMark…. If the leaks are the responsibility of CentiMark under this Warranty, CentiMark will take prompt, appropriate action to return the roof system to a watertight condition." Dkt. No. 36-2 at 2.

"When a contract contains a mix of sales and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *MCR Oil Tools, LLC v. DMG Mori USA, Inc.*, No. 4:20-cv-560-O, 2020 WL 13133311, at *3 (N.D. Tex. Sept. 15, 2020). The Fifth Circuit has held that "installation or construct[ion] to be completed by the seller after delivery" is a factor that weighs in favor of the contract being one for services. *Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 901-902 (5th Cir. 2004). And courts have found contracts "to install flooring or a drainage system, to build a house, to complete a chimney, or to construct or install a swimming pool or a shingled roof" to be primarily for the "rendition of services" because "even though such contracts include the cost of materials" the goods are "incidental." *See id.* at 902; *cf. MCR Oil Tools*, 2020 WL 13133311, at *3 (finding a contract for machines that included delivery and installation was primarily for goods).

But the Court determines that this is primarily a contract for services. While CentiMark provided the materials for insulation, the warranty contemplates future repairs, including CentiMark doing whatever is necessary to make the roof

waterproof. *See* Dkt. No. 36-2 at 2. This is more similar to installation of a shingled roof as opposed to a machine where installation was only incidental. And so, the UCC does not apply to this contract.

Gateway cites cases from the United States Court of Appeals for the Fourth Circuit and the United States District Court for the Northern District of Ohio finding that whether the UCC governs a hybrid contract is a question of fact precluding summary judgment. *See Ankle & Foot Care Centers v. InfoCure Sys., Inc.*, 164 F. Supp. 2d 953, 960 (N.D. Ohio 2001) ("Because a question remains as to whether the instant agreement is predominantly for goods or for services, and that question is one of fact, the Court cannot decide this issue as a matter of law."); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 461 (4th Cir. 1983) (finding that the question of whether the contract was for goods or services was one of fact and not "ripe for resolution").

But CentiMark points to no governing law precluding a determination on summary judgment of this issue, and another judge on this Court has considered whether a contract was governed by the UCC for purposes of summary judgment. *See Robax Corp. v. Pro. Parks, Inc.*, No. 3:07-cv-1399-D, 2008 WL 3244150, at *10-*11 (N.D. Tex. Aug. 8, 2008) (considering whether UCC applied to a contract on a partial motion for summary judgment on breach of contract).

And. so, the Court finds it is not improper to determine the applicability of the UCC at this stage of the proceedings. But, because Gateway was validly assigned

Mobile Park's claims, Gateway need not prevail on this argument to proceed to trial on its claims.

III.   Gateway's Objection to CentiMark's Reply

CentiMark raises for the first time in its reply that Gateway's tort claims are barred by the economic loss doctrine. *See* Dkt. No. 47 at 7. This is outside the scope of Gateway's response, which only states that its tort claims are appropriate for trial because they "arise outside of the warranty" and does not mention the merits of the torts claims or the economic loss doctrine. Dkt. No. 45 at 8.

Gateway states that CentiMark's assertion that the negligence and negligent representation claim should be barred by the economic loss doctrine is a new argument and so should "be stricken and not considered by the Court in the summary judgment proceedings." Dkt. No. 48 at 1. Gateway has titled its filing "Plaintiff's Objection to Defendant's Summary Judgment Reply." *Id.*

The Court agrees that this is a new argument improperly raised in reply.

A court generally will not consider arguments raised for the first time in a reply brief. *See Cavazos v. JP Morgan Chase Bank, N.A.*, 388 F. App'x 398, 399 (5th Cir. 2010) ("'[a]rguments raised for the first time in a reply brief, even by pro se litigants ... are waived'" (quoting *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ) (omission in original)); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771 (N.D. Tex. 2012) (declining to consider new arguments raised in reply brief; *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:06-cv-1576-D, 2008 WL 80760, at *3 n.4 (N.D. Tex. Jan. 8, 2008) (explaining that "this court has repeatedly held that it will not consider arguments raised for the first time in reply"). *See generally Penn. Gen. Ins. Co. v. Story*, No. 3:03-cv-330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (quoting *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-240 (N.D. Tex. 1991) ("The purpose of a reply brief under local rule 7.1(f), 'is to rebut the nonmovant[s'] response, thereby persuading the court that the movant is entitled to the relief requested by the motion.'")). Because [defendant] made new arguments in his reply to the MTD that were not raised in his MTD, the

Court [will] sustain Plaintiffs' Objections and [will] not consider the new arguments raised in [defendant's] reply. And because the Court should ignore such arguments, the Court need not also strike them as Plaintiffs request.

*Blundell v. Lassiter*, No. 3:17-cv-1990-L-BN, 2018 WL 6738046, at *14 (N.D. Tex. May 21, 2018).

While a Court can ignore new arguments raised in reply, it is in the interest of judicial economy that the parties address this issue before trial, and so the Court will allow CentiMark to submit a second motion for summary judgment on this issue only. *See* N. DIST. TEX. LOCAL RULE 56.2(b) ("Unless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment.").

## Conclusion

The Court DENIES CentiMark's motion for summary judgment without prejudice.

The Court will permit a second motion for summary judgment on the issue of whether Gateway's claims for negligence or negligent misrepresentation are barred by the economic loss doctrine, consistent with this order. If CentiMark wishes to raise its economic loss doctrine argument, it must file a motion for summary judgment by **March 4, 2024**, and, if filed, Gateway is ordered to file a response by **April 1, 2024**, and CentiMark may file a reply by **April 15, 2024**.

To allow for this supplemental motion and briefing, the Court VACATES the Order Resetting Case for Trial [Dkt. No. 44] and the deadlines set by that order as well as the March 25, 2024 jury trial setting and the March 21, 2024 final pretrial

conference, and will enter a separate order resetting the jury trial, final pretrial conference, and other related deadlines.

SO ORDERED.

DATED: February 16, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE